UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY L. SHIELDS, Derivatively on
Behalf of Himself and All Others Similarly
Situated,

Plaintiff,

- against -

K. RUPERT MURDOCH, JAMES R.
MURDOCH, LACHLAN K. MURDOCH,
CHASE CAREY, DAVID F. DEVOE, JOEL
KLEIN, ARTHUR M. SISKIND, SIR
RODERICK I. EDDINGTON, ANDREW
S.B. KNIGHT, THOMAS J. PERKINS,
PETER L. BARNES, JOSÉ MARÍA AZNAR,
NATALIE BANCROFT, KENNETH E.
COWLEY, VIET DINH, JOHN L.
THORNTON,

Defendants,

-and-

NEWS CORPORATION,

Nominal Defendant

**MEMORANDUM
OPINION & ORDER**

11 Civ. 4917 (PGG)

G.E. STRICKLIN, Derivatively on Behalf of
NEWS CORPORATION,

Plaintiff,

- against -

K. RUPERT MURDOCH, et al.,

Defendants,

-and-

NEWS CORPORATION,

Nominal Defendant

11 Civ. 5073 (PGG)

IRON WORKERS MID-SOUTH PENSION
FUND, Derivatively on Behalf of NEWS
CORPORATION,

                 Plaintiff,

      - against -

KEITH RUPERT MURDOCH, et al.,

                 Defendants,

-and-

NEWS CORPORATION,

                 Nominal Defendant

11 Civ. 5556 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Gregory L. Shields, G.E. Stricklin, and Iron Workers Mid-South Pension Fund ("Iron Workers") have filed shareholder derivative actions against a group of News Corporation directors and officers (collectively, the "News Corp. Defendants") alleging, <u>inter</u> <u>alia</u>, violations of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("Exchange Act"), breach of fiduciary duty, gross mismanagement, waste of corporate assets, and abuse of control.[1] Plaintiffs allege that the News Corp. Defendants' acts of telephone hacking and bribery have resulted in litigation against News Corp. and law enforcement investigations of the Company's conduct.  Plaintiffs further allege that News Corp.'s efforts to cover up these activities have cost the Company large sums, and resulted in the Company shutting down one of its leading newspapers and abandoning its bid to acquire a broadcasting company.  (<u>See</u> Shields Am. Cmplt.; Stricklin Am. Cmplt.; Iron Workers Cmplt.)

---

[1]  These three actions were filed between July 18, 2011 and August 10, 2011; News Corp. is named in all three complaints as a nominal defendant.

On March 16, 2011, other News Corp. shareholders – not parties here – filed a similar derivative action in the Delaware Court of Chancery against News Corp. directors.  In re News Corporation Shareholder Derivative Litigation, C.A. No. 6285-VCN (Del. Ch.) (the "Delaware Action").  (See Decl. of Scott D. Musoff in Supp. of Def.'s Mot. to Stay ("Musoff Decl."), Ex. C)  Plaintiffs in the Delaware Action filed an Amended Complaint on July 8, 2011, and a Second Amended Complaint on September 21, 2011.  (See Musoff Decl., Exs. A, B)

Defendants in Shields, Stricklin, and Iron Workers have moved to stay these actions pending resolution of the Delaware Action.  (See Shields Not. of Mot., Dkt. No. 24; Stricklin Not. of Mot., Dkt. No. 20; Iron Workers Not. of Mot., Dkt. No. 38)  For the reasons stated below, Defendants' motions to stay will be denied.

## BACKGROUND

### I.   FACTS[2]

Defendant K. Rupert Murdoch founded News Corp. in 1979 as a holding company for News Limited, an Australian newspaper publisher.  (Shields Am. Cmplt. ¶ 48)  News Corp. has become the second-largest media conglomerate in the world by revenue, and it has acquired and founded multiple news entities, including News of the World and The Times in Britain, and the New York Post and Dow Jones (the publishers of The Wall Street Journal) in the United States.  (Id. ¶¶ 48-49)  Plaintiffs allege that Murdoch has complete control over the News Corp. Board of Directors, because it is made up almost entirely of his family members and executives at News Corp. or News Corp. subsidiaries.  (Id. ¶ 52; Stricklin Am. Cmplt. ¶ 60-62)

---

[2]  The facts are drawn from the Iron Workers complaint and from the amended complaints filed in Shields and Stricklin, and are presumed to be true for purposes of resolving Defendants' motions to stay.

### A.      The News Corp. Scandals

In November 2005, <u>News of the World</u> published an article about Prince William that contained private information.  (Iron Workers Cmplt. ¶ 49)  During their investigation of this issue, British law enforcement authorities determined that <u>News of the World</u> employees had intercepted the private voicemails of a number of famous individuals.  (<u>Id.</u>)  In 2007, the author of the <u>News of the World</u> article concerning Prince William, and a private investigator hired by the newspaper, pleaded guilty to hacking the telephones of members of the royal family.  (<u>Id.</u> ¶ 50)  After these convictions, members of the News Corp. Board denied any knowledge of phone-hacking by News Corp. personnel, and insisted that the convictions reflected an isolated incident of misconduct.  (<u>Id.</u> ¶ 51)

In 2008, News International, the United Kingdom publishing division of News Corp., made payments to purported victims of phone-hacking, including a $1.1 million payment to Gordon Taylor, the chairman of the Professional Footballers' Association.  (<u>Id.</u> ¶¶ 2, 52-53)  The settlement with Taylor was intended to resolve claims that <u>News of the World</u> employees had hacked into his voicemail account, and the settlement agreement included a provision that prevented Taylor from disclosing any information about the case.  (<u>Id.</u> ¶ 53)  As reported in <u>The Guardian</u> on July 21, 2009, at least one member of the News Corp. Board, James Murdoch, was aware of the settlement paid to Taylor.  (<u>Id.</u>)

News International publicly denied that any <u>News of the World</u> employee or agent – other than the individuals involved in the Prince William and Taylor incidents – knew about or were involved in phone-hacking.  (<u>Id.</u> ¶ 55)  However, a September 1, 2010 <u>New York Times</u> article reported that "'more than a dozen former reporters and editors at <u>News of the World</u>' claimed that phone-hacking was pervasive and 'everyone knew.'"  (<u>Id.</u> ¶ 60)  One of

these former <u>News of the World</u> journalists claimed that "'illegal activity, including phone-hacking, was so widespread it [was] inconceivable senior editors did not know.'"  (<u>Id.</u> ¶ 62)

On April 8, 2011, News International acknowledged responsibility for phone-hacking, apologized to twenty victims, and set up a $33 million fund to compensate victims.  (<u>Id.</u> ¶ 63)  Among the victims were relatives of British soldiers who were killed in combat in Iraq and Afghanistan, relatives of victims of the July 2005 London bombings, and former prime ministers. (<u>Id.</u> ¶ 65)

Disclosures about additional acts of phone-hacking and other misconduct continued in subsequent months.  (<u>Id.</u> ¶ 64)  On July 4, 2011, <u>The Guardian</u> reported that <u>News of the World</u> hacked into the voicemail of Milly Dowler, a schoolgirl who was murdered.  (<u>Id.</u>) In the days after Dowler disappeared, <u>News of the World</u> reporters hacked into Dowler's voicemail account and intercepted messages left for her.  (<u>Id.</u>)  The reporters also deleted messages from her account when it became full, destroying potentially valuable evidence and producing voicemail activity that gave Dowler's family false hope that she was still alive.  (<u>Id.</u>)

On July 6, 2011, the British Broadcasting Corporation ("BBC") reported that <u>News of the World</u> had paid British police "'tens of thousands of pounds'" in exchange for information.  (<u>Id.</u> at ¶ 66)  Defendant Rebekah Brooks, who was the Editor-in-Chief of <u>News of the World</u> from May 2000 to January 2003, testified before parliament in 2003 that <u>News of the World</u> had "paid the police for information in the past."  (<u>Id.</u> ¶¶ 21, 67)

**B.**     **The Aftermath of the News Corp. Scandals**

On July 6, 2011, Defendant Rupert Murdoch issued a statement describing the

<u>News of the World</u>'s phone-hacking and bribery as "'deplorable and unacceptable.'"  (<u>Id.</u> ¶ 70)

On July 10, 2011, after more than 160 years in print, <u>News of the World</u> discontinued operations.

(Stricklin Am. Cmplt. ¶ 10)  On July 15, 2011, Rebekah Brooks resigned from her position as

CEO of News International, and Defendant Les Hinton resigned as the CEO of Dow Jones.  (Iron

Workers Cmplt. ¶¶ 70-71)  Two days later, Brooks was arrested on criminal charges.  (<u>Id.</u> ¶ 70)

Shields' Amended Complaint alleges that the resignations of Brooks and Hinton have left the

future of News International and Dow Jones uncertain.  (Shields Am. Cmplt. ¶¶ 94-95)

As a result of these scandals, News Corp. also retracted its bid to buy British Sky

Broadcasting ("BSkyB"), a United Kingdom satellite broadcasting company.  (Iron Workers

Cmplt. ¶ 3; Shields Am. Cmplt. ¶ 92)  The acquisition of BSkyB allegedly would have increased

News Corp.'s earnings and geographically diversified its earnings base.  (Iron Workers Cmplt. ¶

72)

Plaintiffs' complaints further allege that (1) the Federal Bureau of Investigation

("FBI") has opened a criminal investigation of News Corp. concerning allegations that the

Company hacked voicemails and other communications of victims of the 9/11 attacks; and (2)

the Securities and Exchange Commission ("SEC") is investigating an alleged violation of the

Foreign Corrupt Practices Act ("FCPA") related to bribery of British police officers by <u>News of</u>

<u>the World</u> journalists.  ((Shields Am. Cmplt. ¶ 93))

**C.**     **News Corp.'s Public Filings**

Throughout the relevant period, a number of the Defendants signed (1) Form

10Ks representing that News Corp. "maintained effective internal control over financial

reporting"; and (2) Form 10Qs representing that News Corp.'s "disclosure controls and procedures were effective."  (Iron Workers Cmplt. ¶ 82; Shields Am. Cmplt. ¶ 56-58)  The Defendants also filed Form 14As (Definitive Proxy Statements) with the SEC; these submissions also addressed News Corp.'s internal controls procedures.  (Iron Workers Cmplt. ¶ 83; Shields Am. Cmplt. ¶ 59)  None of these SEC filings disclosed the Company's ongoing hacking and bribery.  As a result, Plaintiffs Shields and Iron Workers allege that they all contain false and misleading statements, as well as material omissions.  (Iron Workers Cmplt. ¶¶ 82-83; Shields Am. Cmplt. ¶¶ 58-59)

## II.    PROCEDURAL HISTORY

Gregory Shields, a News Corp. shareholder, filed a complaint in this Court on July 18, 2011, and an amended complaint on August 4, 2011.  (Shields Dkt Nos. 1, 4)  Shields' shareholder derivative action names numerous News Corp. Board members as defendants[3] and alleges:  (1) violations of Section 14(a) of the Exchange Act; (2) breach of fiduciary duty; (3) gross mismanagement; (4) contribution and indemnification; (5) abuse of control; and (6) waste of Corporate assets.

G.E. Stricklin, also a News Corp. shareholder, filed a complaint in this Court on July 22, 2011, and an amended complaint on August 16, 2011.  (Stricklin Dkt. Nos. 1, 3)  Stricklin's shareholder derivative action names a number of the same News Corp. Board members as Defendants[4], names other directors, and also names certain officers of News Corp.-

---

[3]  The Shields Complaint names as defendants K. Rupert Murdoch, James R. Murdoch, Lachlan K. Murdoch, Chase Carey, David F. DeVoe, Joel Klein, Arthur M. Siskind, Sir Roderick I. Eddington, Andrew S.B. Knight, Thomas J. Perkins, Peter L. Barnes, José María Aznar, Natalie Bancroft, Kenneth E. Cowley, Viet Dinh, and John L. Thornton.
[4]  Stricklin's Amended Complaint names as defendants K. Rupert Murdoch, Natalie Bancroft, Peter L. Barnes, Chase Carey, Kenneth E. Crowley, David F. DeVoe, Viet Dinh, James R.

related entities as defendants.  Stricklin's Amended Complaint invokes the Court's diversity jurisdiction and alleges the following state law causes of action:  (1) breach of fiduciary duty; (2) waste of corporate assets; and (3) gross mismanagement.

Iron Workers filed a shareholder derivative complaint in this Court on August 10, 2011.  The Iron Workers complaint names as defendants a number of News Corp. Board members as well as officers of News Corp.-related entities.[5] (Iron Workers Dkt. No. 1)  The Complaint alleges (1) violation of Section 14(a) of the Exchange Act; (2) breach of fiduciary duty; (3) waste of corporate assets; and (4) unjust enrichment.

On December 8, 2011, Defendants in all three actions moved to stay these proceedings (see Shields Not. of Mot., Dkt. No. 24; Stricklin Not. of Mot., Dkt. No. 20; Iron Workers Not. of Mot., Dkt. No. 38), arguing that this Court should abstain from taking further action pending resolution of In re News Corporation Shareholder Derivative Litigation, C.A. No. 6285-VCN (Del. Ch.), a shareholder derivative action filed on March 16, 2011, in the Delaware Court of Chancery presenting many of the same factual allegations summarized above.

The co-lead plaintiffs in the Delaware Action – The Amalgamated Bank, the Central Laborers Pension Fund, and New Orleans Employees' Retirement System – amended their consolidated shareholder derivative and class action complaint on July 8, 2011 to add claims involving News of the World.  (See Musoff Decl., Exs. B, C)  Another derivative action was filed on July 15, 2011, and has been consolidated with the Delaware Action.  (See id., Exs.

---

Murdoch, Lachlan K. Murdoch, Thomas J. Perkins, Arthur M. Siskind, Joel Klein, John L. Thornton, Les Hinton, and Paul V. Carlucci.

[5]  The Iron Workers Complaint names the following individuals as defendants:  K. Rupert Murdoch, James R. Murdoch, Chase Carey, David F. DeVoe, Joel Klein, Arthur M. Siskind, Les Hinton, Rebekah Mary Brooks, Lachlan K. Murdoch, Andrew S. B. Knight, Roderick I. Eddington, Thomas J. Perkins, Peter L. Barnes, Kenneth E. Cowley, Viet Dinh, John L. Thornton, José María Aznar, and Natalie Bancroft.

C, D)  The co-lead plaintiffs in the Delaware Action filed a Second Amended Complaint on September 21, 2011 against a number of News Corp. Board members.[6]  (See id., Ex. A)  A motion to dismiss the Second Amended Complaint is pending.  In re News Corporation Shareholder Derivative Litigation, C.A. No. 6285-VCN (Del. Ch.), Dkt. No. 59566899.

The Second Amended Complaint in the Delaware Action alleges four state law breach of fiduciary duty claims.  (See Musoff Decl., Ex. A)  The first and second claims relate to News Corp.'s purchase of Shine Group Ltd., a television and film production company that was operated and majority-owned by Rupert Murdoch's daughter.  (See id. ¶¶ 8, 299-310)  The third and fourth claims – which are founded on the defendants' illegal news-gathering activities, asserts that they knowingly and in bad faith permitted News Corp.'s operations to be run in an unlawful and improper manner.  (Id., Ex. A, ¶¶ 311-327)  The Second Amended Complaint also requests an injunction that would prevent a News Corp. stock buy-back that could allow Murdoch to "gain control of the Company at no expense to himself," and could result in "non-Murdoch shareholders [losing] control of the Company while receiving no premium."  (Id., Ex. A, ¶¶ 335-341)

## DISCUSSION

## I.  THE COLORADO RIVER ABSTENTION DOCTRINE

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'"  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)) (internal quotation

---

[6]  The Second Amended Complaint in the Delaware Action names as defendants Rupert Murdoch, James Murdoch, Lachlan Murdoch, Chase Carey, David F. DeVoe, Joel Klein, Arthur M. Siskind, Roderick Eddington, Andrew S.B. Knight, Thomas J. Perkins, Peter Barnes, José María Aznar, Natalie Bancroft, Kenneth E. Cowley, Viet Dinh, and John L. Thornton.

marks omitted).  "Abstention from the exercise of federal jurisdiction is the exception, not the

rule."[7]  Id. at 813.  In Colorado River, the Supreme Court explained that

> [t]he doctrine of abstention, under which a District Court may decline to exercise
> or postpone the exercise of its jurisdiction, is an extraordinary and narrow
> exception to the duty of a District Court to adjudicate a controversy properly
> before it.  Abdication of the obligation to decide cases can be justified under this
> doctrine only in the exceptional circumstances where the order to the parties to
> repair to the State court would clearly serve an important countervailing interest.

Id. (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).

    The Colorado River Court held that "in situations involving the contemporaneous

exercise of concurrent jurisdiction," a federal court, in "exceptional" circumstances, may dismiss

a federal suit based on "considerations of wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation."  Id. at 817-18

(internal brackets and quotation marks omitted).  "[T]he decision whether to dismiss a federal

action because of parallel state-court litigation does not rest on a mechanical checklist, but on a

careful balancing of the important factors as they apply in a given case."  Moses H. Cone Mem'l

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

    "To determine whether abstention under Colorado River is appropriate, a district

court is required to weigh six factors, 'with the balance heavily weighted in favor of the exercise

---

[7]  Although Defendants have requested a stay, and not abstention, the Second Circuit has
"rejected any distinction between a stay of federal litigation and an outright dismissal for the
purposes of the [Colorado River] exceptional circumstances test."  Bethlehem Contracting Co. v.
Lehrery/McGovern, Inc., 800 F.2d 325, 327 n.1 (2d Cir. 1986); see, e.g., Vill. of Westfield v.
Welch's, 170 F.3d 116, 120-25 (2d Cir. 1999) (analyzing a defendant's motion to stay
proceedings by using the Colorado River abstention doctrine); Andrea Theatres, Inc. v. Theatre
Confections, Inc., 787 F.2d 59, 61-64 (2d Cir. 1986) (same); see also SST Global Tech., LLC v.
Chapman, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003) ("The question presented here, whether to
stay proceedings in a federal action based on the existence of a concurrently pending state civil
action, is governed by the principles of federal abstention doctrine.") (citing Colorado River, 424
U.S. at 818).

of jurisdiction.'"  Vill. of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999) (quoting

Moses, 460 U.S. at 16).  These six factors include:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

Id.  "No single factor is necessarily decisive, and the weight to be given to any one factor

may vary greatly from case to case, depending on the particular setting of the case."  Id.

(internal citation and quotation marks omitted).

## II.      THE IRON WORKERS AND SHIELDS ACTIONS[8]

### A.      Where Federal and State Actions Are Not "Parallel," Abstention Under Colorado River Is Not Appropriate

Before a court evaluates the appropriateness of abstention under Colorado River,

it must make a threshold determination that the federal and state court cases are "parallel."

Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent

proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River.").

"'Federal and state proceedings are "concurrent" or "parallel" for purposes of abstention when

the two proceedings are essentially the same; that is, there is an identity of parties, and the issues

and relief sought are the same.'"  Abercrombie v. College, 438 F. Supp. 2d 243, 258 (S.D.N.Y.

2006) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997)).

"Perfect symmetry of parties and issues is not required.  Rather, parallelism is achieved where

there is a substantial likelihood that the state litigation will dispose of all claims presented in the

federal case."  In re Comverse Tech., Inc., No. 06-CV-1849 (NGG) (RER), 2006 U.S. Dist.

---

[8]  Throughout this section, "Plaintiffs" refers to Iron Workers and Shields.

LEXIS 80195, at *6 (E.D.N.Y. Nov. 2, 2006) (emphasis in original) (citing <u>Clark v. Lacy</u>, 376

F.3d 682, 686 (7th Cir. 2004)) (internal citation omitted)).

   "Any doubt regarding the parallel nature of a federal and state action should be

resolved in favor of the exercise of federal jurisdiction." <u>In re Comverse Tech., Inc.</u>, 2006 U.S.

Dist. LEXIS 80195, at *6 (citing <u>AAR Int'l, Inc. v. Nimelias Enters. S.A.</u>, 250 F.3d 510, 520

(7th Cir. 2001)).  If a court finds that the federal and state cases are not parallel, "<u>Colorado River</u>

abstention does not apply, whether or not issues of state law must be decided by the federal

court." <u>In re Comverse Tech., Inc.</u>, 2006 U.S. Dist. LEXIS 80195, at *12.

  **1. Federal and State Cases Are Not Parallel Where the**
    **<u>Federal Action Alleges an Exclusively Federal Claim</u>**

   Here, Iron Workers and Shields have alleged, <u>inter alia</u>, that Defendants violated

Section 14(a) of the Exchange Act.  (Iron Workers Cmplt. ¶¶ 123-25; Shields Am. Cmplt. ¶¶

123, 129)  "[A]bstention is clearly improper when a federal suit alleges claims within the

exclusive jurisdiction of the federal courts." <u>Andrea Theatres, Inc. v. Theatre Confections, Inc.</u>,

787 F.2d 59, 62 (2d Cir.1986) (citing <u>Levy v. Lewis</u>, 635 F.2d 960, 967-68 (2d Cir. 1980)).

> The reason for this doctrine is clear.  Absent broad state court jurisdiction that
> would enable the state court to dispose of the entire matter, including the issues
> before the federal court, abstention could hardly be justified on grounds of "wise
> judicial administration, giving regard to conservation of judicial resources and
> comprehensive disposition of litigation.

<u>Id.</u> (quoting <u>Colorado River</u>, 424 U.S. at 817).

   Plaintiffs' Section 14(a) cause of action "is brought to obtain relief for alleged

violations of the Securities Exchange Act of 1934.  It is an action exclusively within the

jurisdiction of the federal courts." <u>Finkielstain v. Seidel</u>, 857 F.2d 893, 896 (2d Cir. 1988); <u>see</u>

<u>also</u> <u>SST Global Tech., LLC v. Chapman</u>, 270 F. Supp. 2d 444, 464 (S.D.N.Y. 2003)

("Numerous cases have held that, because federal jurisdiction over securities claims is exclusive, abstention with regard to an action involving federal securities claims is inappropriate.").

Here, because "[f]ederal courts have exclusive jurisdiction over [Exchange Act] claims," the federal and state court cases are not parallel, and "Colorado River abstention is therefore inappropriate." Fields v. Allied Capital Corp., No. 89 Civ. 5679 (TPG), 1990 U.S. Dist. LEXIS 11261, at *3-4 (S.D.N.Y. Aug. 28, 1990) (internal citation omitted); see also Kingsway Fin. Servs. v. Pricewaterhouse-Coopers, LLP, 420 F. Supp. 2d 228, 236 (S.D.N.Y. 2005) ("Because the cases are not parallel, the Court does not have authority to abstain . . . and need not balance the Colorado River factors.") (internal citations and quotation marks omitted).

## 2. That Plaintiffs May Not Satisfy the Delaware Court's Demand Futility Requirement Does Not Warrant Abstention

Defendants argue that Plaintiffs' "contrived Section 14(a) claim does not preclude a stay," because that claim – having been brought "on behalf of" News Corp." – cannot go forward unless plaintiffs can satisfy threshold and exacting pre-suit demand requirements, which have already been presented to, and will be decided by, the court in the Delaware Action."  (Def. Memo in Supp. of Mot. to Stay Proceedings ("Def. Br.") at 20)

A plaintiff bringing a shareholder derivative suit must, inter alia, "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors [of the Board]." Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir. 2008) (citing Fed. R. Civ. P. 23.1) (quotation marks omitted).  "However, failure to meet the demand requirement may be excused if the facts show that demand would have been futile." Id. (citing Smith v. Sperling, 354 U.S. 91, 96-97 (1957); Fed. R. Civ. P. 23.1).

Here, "the demand futility issue will be determined under [Delaware] State law." In re Comverse Tech., Inc. Derivative Litig., 06-CV-1849 (NGG) (RER), 2007 U.S. Dist. LEXIS

68959, at *10 (E.D.N.Y. Sept. 18, 2007).  This application of state law, however, "does not require abstention under Colorado River.  If the federal and state cases are not parallel, and here they are not, Colorado River abstention does not apply, whether or not issues of state law must be decided by the federal court."  In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *11-12.  Because the instant cases "involve causes of action over which federal courts have exclusive jurisdiction" – namely, Plaintiffs' Section 14(a) claims – "federal law will supply the rule of decision for the elements of the exclusively federal claims."  In re Comverse Tech., Inc., 2007 U.S. Dist. LEXIS 68959, at *10-11.

       Even where exclusively federal claims are present, however, abstention may be warranted "if the demand futility issue [is] particularly complex or novel," or if there is "a high likelihood that the demand futility issue [will] dispose[] of the instant litigation."  Id. at *11. Here, Defendants have not demonstrated that the demand futility issue is "particularly complex," nor have they shown that it is highly likely that the Delaware court will find that Plaintiffs failed to satisfy the demand futility requirement.  Rather, Defendants merely state that the "threshold issue of demand futility [ ] pending before the Delaware Court" is "potentially dispositive." (Def. Memo in Further Supp. of Mot. to Stay Proceedings ("Def. Reply Br.") at 5)

       The possibility that the Delaware court's finding on the demand futility issue will dispose of the federal actions is not sufficient to warrant abstaining from deciding Plaintiffs' federal claims.  See In re Comverse Tech., Inc., 2007 U.S. Dist. LEXIS 68959, at *11-12 ("This action involves application of state and federal law and, in the absence of indication that the state law issues are novel or particularly complex, this factor weighs against abstention.") (citing Moses, 460 U.S. at 26 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of [abstention] . . . the presence of federal-law issues must always be a major

consideration weighing against [abstention].")); see also In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *20 (citing Moses, 460 U.S. at 28) ("Further, it would be wholly inappropriate to permit the state court to decide the issue of demand futility, thereby possibly precluding the relief [P]laintiffs seek herein.  In such a situation it would be a serious abuse of discretion to grant a stay.").

### 3.        Defendants' Merits Arguments Do Not Warrant Abstention

Defendants argue that abstention is appropriate because Plaintiffs' Section 14(a) claim "is premised entirely on a finding of a breach of the Board's oversight duties, which is at the core of the Delaware Action," and therefore "a decision in the Delaware Action that Defendants did not breach their fiduciary oversight duties will necessarily dispose of the Section 14(a) claim in its entirety."  (Def. Br. 21)

The cases cited by Defendants do not support their argument, however, because they either do not involve exclusively federal claims or present special circumstances not present here, such as an imminent settlement in the state action.[9]  Whatever decisions the court in the Delaware Action may make, "Colorado River abstention cannot be used to justify abstention with regard to actions that include [ ] claims over which federal courts have exclusive

---

[9] See Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356 (2d Cir. 1985) (affirming dismissal of federal action in favor of state proceedings, but involving no exclusively federal claims); Int'l Jensen Inc. v. Emerson Radio Corp., No. 96 C. 2816, 1996 U.S. Dist. LEXIS 12481, at *12, 18 (N.D. Ill. Aug. 26, 1996) (abstaining from considering federal claims because the parallel state case included a claim under a Delaware law that "recognizes claims based on material misstatements or omissions in proxies, similar to those brought under §14(a) of the 1934 [Exchange] Act"); Gabelli v. Sikes Corp., No. 90 Civ. 4904 (JMC), 1990 U.S. Dist LEXIS 17015, at *14-15  (S.D.N.Y. Dec. 14, 1990) (granting a motion to stay a federal case that included Exchange Act claims in favor of a parallel state proceeding, but only because a tentative settlement had been reached in the state court case); Satzman v. Kiresner, No. Civ. 2886, 1978 U.S. Dist. LEXIS 19823, at *11 (S.D.N.Y. Jan. 31, 1978) (granting a motion to stay a federal case that included Exchange Act claims, but doing so in large part because "the state court action, although filed after [the federal] suit, has reached the state of a hearing on the adequacy of a proposed settlement and thus may well be within sight of final resolution").

jurisdiction." <u>SST Global Tech, LLC</u>, 270 F. Supp. 2d at 464 (abstention argument rejected

where defendants claimed that "adjudication in Delaware will substantially resolve even the

asserted federal securities claim by resolving the underlying factual issues which allegedly

support it").  Because federal courts have exclusive jurisdiction over Plaintiffs' Section 14(a)

claims, they will not be resolved in the Delaware Action.  Staying this action in favor of the

Delaware Action is therefore improper.  See <u>Gabelli v. Sikes Corp.</u>, No. 90 Civ. 4904 (JMC),

1990 WL 213119, at * 5 (S.D.N.Y. Dec. 14, 1990) ("Since it is beyond peradventure that the

[state] courts cannot adjudicate the securities fraud claims, a stay pending a decision on the

merits in the [state court] actions would not be proper.") (citing <u>United States v. Pikna</u>, 880 F.2d

1578, 1582-83 (2d Cir. 1989)).

   Defendants also argue that Plaintiffs "are not permitted to fabricate federal

jurisdiction, and should not be allowed to sidestep the stay called for here, by tacking on a

meritless Section 14(a) claim."  (Def. Br. 21-22)  Defendants have not demonstrated that

Plaintiffs' Section 14(a) claims are meritless, however, and the cases they cite are, once again,

inapposite.  One of the cases does not involve any federal claims, while the remaining four

involve motions to dismiss rather than a motion to stay.[10]  In any event, in determining whether

abstention is appropriate under <u>Colorado River</u>, this Court is not required to evaluate the merits

---

[10]  See <u>Clark</u>, 376 F. 3d at 687 (affirming district court's stay of a federal action where the
federal action alleged only state law claims); <u>Field v. Trump</u>, 850 F.2d 938, 950 (2d Cir. 1988)
(affirming in part and reversing in part the dismissal of claims brought under the federal
Williams Act and the Exchange Act, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); <u>In re
Marsh & McLenna Cos. Sec. Litig.</u>, 536 F. Supp. 2d 313, 326 (S.D.N.Y. 2007) (granting
defendants' motion to dismiss plaintiff's Section 14(a) claim pursuant to Fed. R. Civ. P.
12(b)(6)); <u>Fink v. Weill</u>, No. 02 Civ. 10250 (LTS) (RLE), 2005 U.S. Dist. LEXIS 20659, at *22
(S.D.N.Y. Sept. 19, 2005) (granting defendants' motion to dismiss plaintiff's Section 14(a)
claims pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1); <u>Halpert Enters. Inc. v. Harrison</u>, No. 02
Civ. 9501, 2005 U.S. Dist. LEXIS 15022, at *9 (S.D.N.Y. July 26, 2005) (granting defendants'
motion to dismiss plaintiff's Section 14(a) claims pursuant to Fed. R. Civ. P. 23.1).

of a plaintiff's claims.  See Vill. of Westfield, 170 F.3d at 121 (outlining the six factors a district

court must weigh in determining whether Colorado River abstention is appropriate).

> **B.**  **Even If the Actions Were Parallel, a Stay Would**
> **Not Be Appropriate Under Colorado River**

Even if the federal and state actions here were parallel, abstention would not be

appropriate, because the majority of the Colorado River factors weigh in favor of the exercise of

federal jurisdiction.

> **1.**  **Neither Court Has Assumed Jurisdiction Over Any Res or Property**

The first factor in the Colorado River abstention analysis is whether either the

state or federal court has assumed jurisdiction over any res or property.  Vill. of Westfield, 170

F.3d 121.  "This action [is] not an in rem action and d[oes] not involve jurisdiction over

property.  [The Second Circuit] [has] held that the absence of a res points toward exercise of

federal jurisdiction."  Id. at 122 (citing De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir.

1989) (quotation marks omitted)).  This factor, therefore, weighs against abstention.

> **2.**  **The Federal Forum Is Not Inconvenient**

The second factor is whether the federal forum is inconvenient for the party

moving to stay the proceedings.  See Vill. of Westfield, 170 F.3d at 121.  "The distance between

state and federal fora has been deemed to render the federal forum inconvenient."  SST Global

Tech., LLC, 270 F. Supp. 2d at 465 (citing Radioactive, J.V. v. Manson, 153 F. Supp. 2d 462,

476 (S.D.N.Y. 2001) (finding federal forum inconvenient under abstention analysis where

"witnesses and parties will be forced to travel back and forth between California and New

York").  However, "[w]here the federal court is just as convenient as the state court, that factor

favors retention of the case in federal court."  Vill. of Westfield, 170 F.3d at 122 (citation and

quotation marks omitted).

Defendants do not argue that the Southern District of New York is an inconvenient forum, but they assert that they "will be severely prejudiced if they are forced simultaneously to defend against identical litigation in separate forums."  (Def. Br. 20) Accepting this argument would render this factor in the <u>Colorado River</u> abstention analysis meaningless, however.  If the existence of litigation in separate courts was determinative in the analysis of inconvenience, this factor would weigh in favor of abstention in every case, because every motion to stay involves a situation in which litigation is proceeding in separate courts.  <u>See</u> <u>Vill. of Westfield</u>, 170 F.3d at 122 ("[F]ederal courts consider abstaining under <u>Colorado River</u> only in cases where there are concurrent and simultaneous federal and state proceedings.").

The federal forum is not inconvenient for the Defendants.  Nominal Defendant News Corp. maintains its executive offices in New York City, at least eight of the individual defendants are citizens of either New York or Connecticut, and the remaining individual defendants are citizens of Australia, Great Britain, Spain, California, Colorado, Texas, Virginia, and New Jersey – most of which are not significantly closer to Delaware than they are to New York.  (<u>See</u> Shields Am. Cmplt. ¶¶ 15-31; Iron Workers Cmplt. ¶¶ 13-31)  Moreover, "with modern travel options, the effective distance between this forum (New York) and the state forum (Delaware) is short and would not appear to pose undue hardship."  <u>SST Global Tech., LLC</u>, 270 F. Supp. 2d at 465.

Because the Southern District of New York is "just as convenient" as Delaware, this factor also weighs against abstention.  <u>See</u> <u>Vill. of Westfield</u>, 170 F.3d at 122.

### 3.      Staying the Federal Action Would Not Avoid Piecemeal Litigation

The third Colorado River factor involves an analysis of whether "the federal action must be stayed in order to prevent piecemeal litigation." Vill. of Westfield, 170 F.3d at 123.

Defendants argue that "[l]itigating essentially the same factual and legal issues in both the Delaware Court of Chancery and this Court unnecessarily would invite waste and duplication of effort. . . ." (Def. Br. 15)  As discussed above, however, the issues in the federal and state cases are not "essentially the same," because the state court does not have jurisdiction over Plaintiffs' exclusively federal Section 14(a) claims. See, e.g., Finkielstain, 857 F.2d at 896 ("[An action] brought to obtain relief for alleged violations of the Securities Exchange Act of 1934 . . . is an action exclusively within the jurisdiction of the federal courts.").  "The presence of the federal securities law claim . . . makes it plain that abstention as to the state law claims would not operate to reduce piecemeal litigation." SST Global Tech., LLC, 270 F. Supp. 2d at 465 (citing Cohen v. Reed, 868 F. Supp. 489, 500 (E.D.N.Y. 1994) (finding that, if the federal "action were stayed or dismissed pending resolution of the State-court action, [the plaintiff] would not be able to litigate his federal securities fraud claim, and would have to return to federal court once more . . . [and] [t]hus, abstention would not serve to avoid piecemeal litigation")).  Because the Delaware Court of Chancery does not have "broad and comprehensive concurrent jurisdiction to adjudicate the claims asserted in the federal action . . . abstention might only serve to encourage piecemeal adjudication of the issues raised in the federal suit." Andrea Theatres, 787 F.2d at 62.

Defendants also argue that "[t]he failure to stay this action . . . would create a substantial risk that this Court and the Delaware Court of Chancery might render conflicting

rulings. . . ."  (Def. Br. 16)  However, "[t]he mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor."  In re Bank of Am. Corp. Secs., 757 F. Supp. 2d 260, 345 (S.D.N.Y. 2010) (citing Colorado River, 424 U.S. at 816 ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.")); see also In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *17 ("[T]he potential for piecemeal litigation is always present in potentially parallel litigations, and the courts must look beyond this factor to ascertain whether abstention is appropriate.").  Moreover, while not staying the federal actions will lead to some amount of duplication due to similar "factual underpinnings," such "duplication does not weigh significantly in favor of abstention."  See SST Global Tech., LLC, 270 F. Supp. 2d at 466.

   "A related aspect of piecemeal litigation, however, is whether resolution in one forum will resolve the claims as to all parties."  SST Global Tech., LLC, 270 F. Supp. 2d at 465 (citing Tarka v. Greenfield Stein & Senior, LLP, No. 00 Civ. 1262 (SAS), 2000 U.S. Dist. LEXIS 11203, at *16 (S.D.N.Y. Aug. 8, 2000) (noting that "piecemeal litigation . . . is a product of additional parties")).  "[A]bstention is more appropriate where the parties to both suits are not identical because there is a possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits."  Fischmann v. VisionTel., 934 F. Supp. 115, 118 (S.D.N.Y. 1996); see also Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co., N.A., 806 F.2d 411, 414 (2d Cir. 1986) (noting that "[piecemeal] litigation would complicate and fragment the trial of cases and cause friction between state and federal courts").

   The Second Circuit has noted that

   the primary context in which [it] [has] affirmed Colorado River abstention in
   order to avoid piecemeal adjudication has involved lawsuits that posed a risk of
   inconsistent outcomes not preventable by principles of res judicata and collateral
   estoppel.  The classic example arises where all of the potentially liable defendants

are parties in one lawsuit, but in the other lawsuit, one defendant seeks a
declaration of nonliability and the other potentially liable defendants are not
parties.

Woodford v. Cmty. Action Agency of Greene Cnty., 239 F.3d 517, 524 (2d Cir. 2001) (citing De

Cisneros, 871 F.2d at 308; General Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 81 (2d

Cir. 1988); Lumbermens Mut. Cas. Co., 806 F.2d at 414; see also Fischmann, 934 F. Supp. at

188 n.4 (citing De Cisneros, 871 F.2d at 308) ("For example, in De Cisneros, a complicated

multi-party tort action, our court of appeals noted that the state plaintiffs who were not parties to

the federal suit would not be bound by the judgment of the district court and could relitigate the

action with different results.").

   Here, the Delaware Action names sixteen individual defendants.  Although

Shields' Amended Complaint names the same sixteen people as defendants, the Iron Workers

Complaint names two additional defendants – Les Hinton and Rebekah Mary Brooks.  (See

Musoff Decl., Ex. A; Shields Am. Cmplt.; Iron Workers Cmplt.)  Where "the parties to the suits

are not identical and thus not all bound by the judgment of any given court," "the problem of

piecemeal litigation is exacerbated by the risk of inconsistent results."  American Alliance Ins.

Co. v. Eagle Ins. Co., 961 F. Supp. 652, 658 (S.D.N.Y. 1997).

   Unlike De Cisneros and American Alliance Ins. Co., however, where the "state

proceedings [were] more comprehensive than the federal proceedings," here there are defendants

in the federal action who are not named in the Delaware Action.  See De Cisneros, 871 F.2d at

308; American Alliance Ins. Co, 961 F. Supp. at 658.  Because Hinton and Brooks are not named

in the Delaware Action, "the claims against [them] may not be resolved in the state case and will

likely require federal resolution regardless of the outcome of the state case."  See SST Global

Tech., LLC, 270 F. Supp. 2d at 466.  "[A]bstention by this Court may not, therefore, reduce the likelihood of piecemeal litigation." Id.

While the existence of the Section 14(a) claims and the additional parties in the federal action may lead to piecemeal litigation, granting Defendants' motions to stay will not prevent – or reduce the likelihood of – piecemeal litigation. "On balance, [therefore,] this factor . . . would not appear to weigh heavily either for or against abstention."  Id.  Because, "[i]n this [abstention] analysis, the balance [is] heavily weighted in favor of the exercise of jurisdiction[,] . . . the facial neutrality of [this] factor is a basis for retaining jurisdiction, not for yielding it." Woodford, 239 F.3d at 522 (citing Moses, 460 U.S. at 16) (internal citation and quotation marks omitted).  This factor thus weighs slightly against abstention.

### 4.    The Delaware Action Is More Advanced

The fourth Colorado River factor involves an analysis of "the order in which jurisdiction was obtained."  Vill. of Westfield, 170 F.3d at 121.  "This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions."  Id. at 122 (citing Moses, 460 U.S. at 21) (quotation marks omitted).  "In addition, where there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'"  Id. (citing Andrea Theatres, Inc., 787 F.2d at 64).

The plaintiffs in the Delaware Action filed their first complaint on March 16, 2011, but they did not file an amended complaint that contained allegations involving News of the World until July 8, 2011.  (See Musoff Decl., Exs. B, C)  A fully briefed motion to dismiss is pending in the Delaware Action.  In re News Corporation Shareholder Derivative Litigation, C.A. No. 6285-VCN (Del. Ch.), Dkt. No. 59566899.

Plaintiff Shields filed his original complaint on July 18, 2011, and his amended complaint on August 4, 2011.  (See Shields Am. Cmplt.)  Plaintiff Iron Workers filed its complaint on August 10, 2011.  (See Iron Workers Cmplt.)  The Delaware complaint containing allegations regarding News of the World was thus filed approximately one month before the operative complaints in these federal actions.

Because this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions," the earlier filing of the Delaware Action is not determinative.  See Moses, 460 U.S. at 21.  The Delaware Action is more advanced than the federal actions, however.  Given that a fully briefed motion to dismiss is pending, "[i]t is more likely that the action in [the Delaware court] will proceed more rapidly than the action[s] in [federal] court. . . ."  See In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *18; but see Macy's East v. Emergency Envt'l Servs., 925 F. Supp. 191, 193 (S.D.N.Y. 1996) (finding that "given the heavy burdens on the [New York] state court, the [New York] federal action is likely to move forward with more rapidity than the state court action unless the former is artificially stayed").

Because the Delaware Action is more advanced than the federal actions, this factor weighs in favor of abstention.

### 5.   Federal Law Supplies the Rule of Decision

The fifth factor in the Colorado River analysis is "whether state or federal law provides the rule of decision on the merits."  Vill. of Westfield, 170 F. 3d at 123.  The Second Circuit has stated that "when the applicable substantive law is federal, abstention is disfavored." Id. (quoting De Cisneros, 871 F.2d at 308).

"Because the present claim includes federal securities law claims over which this Court has original and exclusive jurisdiction, federal law . . . supplies the rule of decision with regard to [Plaintiffs'] [Section 14(a)] claim."  SST Global Tech., LLC, 270 F. Supp. 2d at 466-67.  Moreover, "even if this case were based solely on diversity, and there were no federal claims, that would not, in and of itself, warrant abstention."  In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *19.

> [T]here is no indication that the state-law issues raised in this case are particularly complex or unsettled; thus, there is no reason to question the relative competence of the federal court to adjudicate those issues.  Indeed, the very existence of diversity jurisdiction rests on a presumption that federal courts are competent to decide questions of state law.

Id. at 20 (quoting Cottman Transmission Systems v. Lehwald, Inc., 774 F. Supp. 919, 923 (E.D. Pa. 1991).

Because Federal law supplies the rule of decision for Plaintiffs' Section 14(a) claims, this factor weighs heavily against abstention.

### 6.   The State Court Proceeding Cannot Adequately Protect Plaintiffs' Rights

"In analyzing the sixth factor . . . , federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'"  Vill. of Westfield, 170 F.3d at 124 (quoting Moses, 460 U.S. at 28).  "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay . . . at all."  Moses, 460 U.S. at 28.

"As discussed above, this Court has exclusive jurisdiction over [P]laintiffs' Exchange Act claims, and those claims cannot be adjudicated in state court."  In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *20; see also SST Global Tech., LLC, 270 F. Supp. 2d at 466-67 ("Because the present claim includes federal securities law claims over which this

Court has exclusive jurisdiction . . . plaintiff's interest relating to its securities law claims could not, as a matter of law, be adequately protected in state court, which is barred from providing affirmative relief with regard to these claims.")  "Further, it would be wholly inappropriate to permit the state court to decide the issue of demand futility, thereby possibly precluding the relief [P]laintiffs seek herein.  In such a situation it would be a serious abuse of discretion to grant a stay."  In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *20 (citing Moses, 460 U.S. at 28).  Because Plaintiffs' federal claims cannot be vindicated in the state court proceeding, it will not adequately protect their rights. This factor therefore weighs heavily against abstention.

  **C.**  **Conclusion**

    In analyzing whether abstention is appropriate under Colorado River, this Court's task "is not to determine whether there is some substantial reason for the exercise of federal jurisdiction," but rather to "ascertain whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction."  Vill. of Westfield, 170 F.3d at 124 (citing Moses, 460 U.S. at 25-26).  Given that all but one of the six Colorado River factors weigh against abstention, such exceptional circumstances do not exist.  Accordingly, even if the federal and state actions were parallel, a stay of the Shields and Iron Workers actions would not be not warranted.

    Defendants' motions for a stay in Shields and Iron Workers will be denied.

**III.**  **THE STRICKLIN ACTION**

    Defendants assert that a stay is warranted in the Stricklin action "because it will allow the Court and the parties to avoid having to devote time and resources to considering the significant questions regarding jurisdiction over [the action]."  (Def. Br. 23)  As discussed below, however, Stricklin's Amended Complaint does not properly plead subject matter jurisdiction.

Accordingly, the Amended Complaint will be dismissed, and Defendants' motion for a stay in Stricklin will be denied as moot.

    **A.**    **Background**

        In an August 5, 2011 pre-motion letter to this Court, Defendants argued that Stricklin's original complaint "fail[ed] to establish that the Court has subject matter jurisdiction over the action based on diversity of citizenship because the complaint does not allege the citizenship of any of the 19 individual defendants." (Aug. 5, 2011 Def. Ltr.) On August 8, 2011, Stricklin responded to Defendants' letter, stating that she would "amend the Complaint to address News Corp.'s expressed [jurisdictional] concerns and eliminate them." (Aug. 8, 2011 Stricklin Ltr.; see Def. Br. 23) In their motion to stay, Defendants argue that Stricklin's Amended Complaint does not address the jurisdictional issue, because it fails to allege the citizenship of any of the individual defendants. (Def. Br. 23) Defendants further assert that "Stricklin could not adequately plead diversity jurisdiction because she is a citizen of Florida, as is individual defendant John Thornton." (Def. Br. 23 (citing Stricklin Am. Cmplt. ¶ 9; Iron Workers Cmplt. ¶ 29) (internal citations omitted))

        Stricklin's Amended Complaint – filed on August 16, 2011 (Dkt. No. 3) – does not cure the jurisdictional deficiencies in her original complaint. Both complaints state that "[t]his Court has jurisdiction over the claims asserted by Plaintiff herein pursuant to 28 U.S.C. § 1332(a)(1), in that Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interests and costs." (Stricklin Am. Cmplt. ¶ 6; Stricklin Cmplt. ¶ 3 (Dkt. No. 1)) Both complaints also state that "Plaintiff is a citizen of the State of Florida," but neither of the complaints allege the citizenship of the individual defendants. (Stricklin Am. Cmplt. ¶¶ 9-30; Stricklin Cmplt. ¶¶ 6-26) Instead, both complaints

merely state that "[a]ll of the Defendants are citizens of states other than Florida."  (Stricklin Am. Cmplt. ¶ 31; Stricklin Cmplt. ¶ 27)  The <u>Iron Workers</u> Complaint, however, alleges that Defendant Thornton is a citizen of Florida.  (Iron Workers Cmplt. ¶ 29).

> ### B.      <u>Applicable Law</u>

Federal courts have diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  "'[C]itizens of different States' means that there must be complete diversity, i.e., that each plaintiff's citizenship must be different from the citizenship of each defendant."  <u>Hallingby v. Hallingby</u>, 574 F.3d 51, 56 (2d Cir. 2009) (citing <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996); <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806)).  "'[N]aked allegations that the parties are citizens of different states, absent an averment of the particular states of which the parties are citizens, are insufficient to meet the pleading requirement.'"  <u>Laufer Wind Group LLC v. DMT Holdings, LLC</u>, No. 10 Civ. 8716 (RJH), 2010 U.S. Dist. LEXIS 135430, at *3 (S.D.N.Y. Dec. 22, 2010) (quoting <u>Ganoe v. Lummis</u>, 662 F. Supp. 718, 723 (S.D.N.Y. 1987)).

While a defendant may assert lack of subject matter jurisdiction as a defense to a plaintiff's claim, <u>see</u> Fed. R. Civ. P. 12(b)(1), "it is [the Court's] obligation to raise the matter of subject matter jurisdiction 'whenever it appears from the pleadings or otherwise that jurisdiction is lacking.'"  <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 63 (2d Cir. 2009) (quoting <u>John Birch Society v. Nat'l Broad. Co.</u>, 377 F.2d 194, 199 (2d Cir. 1967)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

C.     **Stricklin Has Not Properly Pled Diversity Jurisdiction**

Stricklin has failed to aver "the particular states of which the parties are citizens."
See Laufer Wind Group LLC v. DMT Holdings, LLC, 2010 U.S. Dist. LEXIS 135430, at *3.
Instead, she simply pleads that she is a citizen of Florida and that all of the defendants are
citizens of different states.  (See Stricklin Am. Cmplt. ¶¶ 6, 31)  "Because [Stricklin] has not
pleaded the citizenship of [the Defendants], the Court can only speculate as to whether complete
diversity exists."  Laufer Wind Group LLC, 2010 U.S. Dist. LEXIS 135430, at *4.

Moreover, Stricklin has had notice since August 2011 of the jurisdictional defect
in her pleadings; indeed, in her August 8, 2011 letter to this Court, she promised to amend her
complaint to address these concerns.  (See August 8, 2011 Stricklin Ltr.)  But the Amended
Complaint does not cure the jurisdictional deficiencies.

"[W]here a court discovers that it lacks subject matter jurisdiction, a motion [to
dismiss] is not required, for this Court, like all federal courts, has an 'obligation to raise the
matter of subject matter jurisdiction [sua sponte] whenever it appears from the pleadings or
otherwise that jurisdiction is lacking.'"  Laufer Wind Group LLC, 2010 U.S. Dist. LEXIS
135430, at *4 (quoting Durant, 565 F.3d at 63 (internal quotation marks omitted)); see also
United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square,
30 F.3d 298, 301 (2d Cir. 1994) ("[O]ur cases make clear that 'it is common ground that in our
federal system of limited jurisdiction any party or the court sua sponte, at any stage of the
proceedings, may raise the question of whether the court has subject matter jurisdiction.")
(citation and quotation marks omitted).

While Stricklin's failure to properly plead subject matter jurisdiction requires that
the Amended Complaint be dismissed, see Fed. R. Civ. P. 12(h)(3), courts in this Circuit

"'generally afford an opportunity for amendment' of the pleadings to cure defective jurisdictional allegations 'unless the record clearly indicates that the complaint could not be saved by any truthful amendment.'"  Durant, 565 F.3d at 65-66 (citing Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997) (allowing plaintiff to amend the complaint to properly allege diversity jurisdiction after the court sua sponte raised the issue of subject matter jurisdiction)); see also Laufer, 2010 U.S. Dist. LEXIS 135430, at *5-6 (dismissing the complaint for lack of subject matter jurisdiction after raising the issue sua sponte, but giving plaintiff leave to file an amended complaint within thirty days that properly pleaded diversity jurisdiction); DirecTV Latin Am., L.L.C. v. Park 610, L.L.C., 614 F. Supp. 2d 446, 447-49 (S.D.N.Y. 2009) (adopting the magistrate judge's sua sponte finding that "subject matter jurisdiction [did] not exist . . . because complete diversity was destroyed by the citizenship of [two of the parties]," and adopting the magistrate judge's recommendation to dismiss the action, "but with leave to file an amended complaint removing some claims and defendants to cure jurisdictional defects").

This Court will grant Stricklin leave to file a Second Amended Complaint.

## CONCLUSION

For the reasons stated above, Defendants' motions to stay the proceedings in Shields and Iron Workers are denied.

The Amended Complaint in Stricklin is dismissed for lack of subject matter jurisdiction. Stricklin is granted leave to file a Second Amended Complaint within 30 days that properly pleads subject matter jurisdiction. If Stricklin fails to do so, the Clerk of the Court is directed to close the Stricklin case. Defendants' motion to stay in Stricklin is denied as moot.

The Clerk of the Court is directed to terminate the motions. (11-cv-4917, Dkt. No. 24; 11-cv-5073, Dkt. No. 20; 11-cv-5556, Dkt. No. 38)

Dated: New York, New York
       September 18, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge